Filed 7/31/23  P. v. Rosser CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B320512 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA040826) |
| v. | |
| ANTHONY JOHN ROSSER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Norman J. Shapiro, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

In January 1992, a jury found Anthony John Rosser guilty of one count of first degree murder and one count of willful, deliberate, and premeditated attempted murder. As to each count, the jury found true the allegation that a principal was armed with a firearm. At trial, the prosecution presented evidence that Rosser drove a car, chasing the victims, as his passenger fired upon the victims during a gang-related, car-to-car shooting. Rosser was tried alone. The jury was instructed that it could return a verdict of first degree murder if it found, in pertinent part, "that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant [Rosser] to kill, which was the result of deliberation and premeditation . . . ."

In August 2021, Rosser filed a form petition for resentencing under Penal Code former section 1170.95 (now section 1172.6), a statute which currently authorizes relief for, among others, persons convicted of murder or attempted murder under the natural and probable consequences doctrine (or felony murder).[1] In a response to the petition, the district attorney asserted Rosser could not make a prima facie case for relief because his record of conviction demonstrates his jury was not instructed on the natural and probable consequences doctrine or felony murder, and he could not have been convicted under either theory of liability. The district attorney attached to the response an excerpt of the reporter's transcript of Rosser's trial, reflecting

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). In this opinion, we typically refer to the statute by its current designation, section 1172.6.

Undesignated statutory references are to the Penal Code.

that the trial court did not read to the jury any instruction on the natural and probable consequences doctrine or felony murder. Rosser's appointed counsel did not file a reply brief in support of the petition for resentencing or present argument at the hearing to determine whether Rosser made a prima facie case for relief. The trial court denied the petition for resentencing without issuing an order to show cause and holding an evidentiary hearing, stating in its minute order that the district attorney presented facts indicating the petition is without merit.

On appeal, Rosser contends the trial court denied his petition for resentencing based on a misapprehension of his record of conviction, and the matter must be remanded for an evidentiary hearing. We granted his request for judicial notice of the appellate record in his direct appeal of his convictions. Consistent with the assertions the district attorney made in the response to the petition for resentencing, the reporter's transcript of Rosser's trial shows the trial court declined the prosecution's request to instruct the jury on the natural and probable consequences doctrine, the court did not read such an instruction to the jury (or an instruction on felony murder), and the prosecution did not advance such a theory to the jury. However, the clerk's transcript from the direct appeal—which was not presented to the court in connection with the petition for resentencing—indicates the trial court included a jury instruction on the natural and probable consequences doctrine in the packet of written instructions provided to the jury.

We affirm the order denying the petition for resentencing because Rosser's record of conviction shows he is ineligible for relief under section 1172.6 as a matter of law, notwithstanding the apparent inadvertent inclusion of a natural and probable

3

consequences doctrine instruction in the packet given to the jury. As explained below, the jury instructions on premeditation and deliberation, among others, and the jury's verdicts demonstrate the jury necessarily found Rosser acted with intent to kill when he aided and abetted the murder and attempted murder.

## BACKGROUND

We granted Rosser's request for judicial notice of the opinion in the direct appeal of his convictions (*People v. Rosser* (Aug. 3, 1993, B066593 [nonpub. opn.]) and the appellate record in the direct appeal. To give context to Rosser's contentions in this appeal, we provide a brief overview of the circumstances of the shooting, taken from the record in the direct appeal.[2] These facts are not material to our legal analysis, and we do not rely on them as the basis for affirming the trial court's order denying Rosser's petition for resentencing. As discussed below, the jury instructions given at Rosser's trial and the jury's verdicts demonstrate Rosser is ineligible for resentencing under section 1172.6 as a matter of law.

I.    **Trial and Direct Appeal**

A.    **Evidence of the circumstances of the shooting**

In January 1992, Rosser was tried alone for the murder of William Pineda (count 1) and the attempted murder of Lemel Jackson (count 2). Jackson testified at trial regarding the circumstances of the shooting. He stated he was a passenger in a car driven by decedent Pineda. Two cars drove toward them on a narrow street and Pineda pulled over to let them pass. Jackson

_____

[2] In his opening brief in this appeal, Rosser incorporated by reference the statement of facts from the opinion in his direct appeal. That statement of facts is consistent with our brief overview of the circumstances of the shooting.

4

identified defendant Rosser as the driver of the first car—a burgundy Chevrolet Impala convertible with the top down—which stopped next to the car Pineda was driving. Rosser had a passenger. Rosser asked Pineda and Jackson, " 'What's up,' " and they responded in kind. Pineda and Jackson asked Rosser, " 'Are you going to go,' " because Rosser's car and the car behind him were blocking their way. Rosser raised up in his seat and looked at Jackson, who was wearing a blue shirt. Then, Rosser turned around and addressed someone in the car behind him, stating, " 'Bullet, hit some crabs.' " An officer from the Los Angeles Police Department's gang unit testified that Rosser was an admitted member of a set of the Bloods criminal street gang. The officer also testified that the Crips criminal street gang was associated with the color blue, and Crips and Bloods were rivals. He further testified that " 'crab' " was a derogatory term used by the Bloods to refer to a member of the Crips.

Jackson testified that he instructed Pineda to drive away, and Pineda did, with Jackson giving him directions on which way to go. After they made a few turns, Jackson spotted Rosser's car. Jackson told Pineda to drive on the wrong side of the street, and Pineda complied. Then, Pineda turned onto a different street by cutting across a sidewalk. When Jackson looked behind him, Rosser's car was in pursuit and accelerating toward them. As Pineda was preparing to turn left against a red light, Jackson heard at least five gunshots. The rear window of the car shattered. Jackson crouched down. A bullet struck Pineda in the head and killed him, as he drove. The car ran over a curb and stopped. A witness who was walking down the street at the time of the shooting testified at trial. He stated he heard gunshots and took cover. When he looked around thereafter he saw a

grape-colored convertible Chevrolet Impala with the top down and two people inside. The passenger was standing up in the car.

### B. Trial court's denial of prosecution's request for jury instruction on natural and probable consequences doctrine

During a conference on jury instructions, the prosecution requested the trial court instruct the jury on the natural and probable consequences doctrine with CALJIC No. 3.02. The court stated the instruction did not apply because the evidence did not support a natural and probable consequences theory. The prosecutor commented that Rosser might nonetheless argue the case that way. Defense counsel objected to the instruction and asked the court to remove it from the packet of instructions the prosecution prepared. The court indicated it would *not* instruct the jury with CALJIC No. 3.02.

### C. Argument to the jury

In argument to the jury, the prosecutor did not mention the natural and probable consequences doctrine (or felony murder). He argued Rosser was guilty of the charged offenses as an aider and abettor of murder and attempted murder.

In his opening argument, the prosecutor explained to the jury that the prosecution had to establish malice aforethought to prove Rosser committed a murder, and he described the evidence that he contended showed Rosser acted with intent to kill. After reviewing that evidence, he argued to the jury: "It's clear from those actions, ladies and gentlemen, that the defendant [Rosser] had an intent to kill here. His passenger had an intent to kill, [*sic*] because he's an aider and abet[o]r. He shares that intent." The prosecutor also explained to the jury that the prosecution

6

had to establish malice aforethought, i.e., intent to kill, to prove Rosser committed attempted murder.

Later in his opening argument, the prosecutor stated the following regarding the doctrine of aiding and abetting and its application to this case:

"As you were asked on voir dire by the judge, it is clear by now, the defendant [Rosser] is guilty in this case. He is an aider and abettor. And the judge will instruct you on what that means. But under the law, a person who aids and abets a crime is equally guilty. He's just as guilty as the shooter.

"If the defendant is an aider and abettor in this case, basically what happens is his responsibility is the same as the shooter. He steps into the shooter's shoes for the purposes of being responsible for the death of William Pineda.

"What needs to be proved in order to show that the defendant is an aider and abettor is fairly straightforward.

"One, knowledge of the unlawful purpose of the perpetrator.

"And two, with the intent or purpose of committing, encouraging, or facilitating the commission of the crime[,] by act or advice aids, promotes, encourages, or instigates the commission of the crime. That's what makes someone an aider and abettor.

"Ladies and gentlemen, apply the facts to the law. Did defendant have knowledge of the unlawful purpose of the passenger? Obviously, he does, that's why he's chasing William [Pineda] and Lemel [Jackson]. He knows what his passenger is going to do. They're just chasing them to get a better look at their car. They're chasing them because the defendant thinks they're rival gang members in his neighborhood, and they're

7

going to take care of it. So he knows what his passenger is going to do, and he certainly knows when the passenger pulled out his gun and stands up on the passenger side, he knows what's going on.

"Does the defendant do anything to aid, promote, or instigate the murder? Absolutely, I mean, first of all, he's the one who instigates it. He's the one who starts all this. If it wasn't for the defendant, none of this would have happened.

"He's the one who starts it. He continues to instigate, to aid, to promote it by telling these people behind him that he thinks Lemel [Jackson] is a rival gang member[;] by driving after him throughout the whole course of the chase.

"He's aiding and promoting and encouraging the murder. He's the driver. That makes him an aider and abettor.

"That's the law on aiding and abetting. And that's what it is that makes the defendant guilty of murder in this case."

Defense counsel, in his closing argument, challenged Jackson's credibility and his identification of Rosser as the driver. Defense counsel did not review with the jury the elements of murder and attempted murder. He made the following argument (in full) regarding aiding and abetting: "If you feel that the driver had no knowledge or there was insufficient evidence that the driver had knowledge that the passenger was going to shoot, then you would have to acquit on the aiding and abetting theory."

D.     **The trial court's reading of the jury instructions**

Just before reading the jury instructions, the trial court told the jury, "These instructions, not only will I read them to you, but you will have them for your review during your deliberations. The first instruction the court read, CALJIC No.

8

1.00, also informed the jury, in pertinent part, "You will have these instructions in written form in the jury room to refer to during your deliberations."

The trial court instructed the jury on the definition of principals with CALJIC No. 3.00, stating: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime." Next, the court instructed the jury on the definition of aiding and abetting with CALJIC No. 3.01, stating, in pertinent part: "A person aids and abets the commission or attempted commission of a crime when he or she, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] With the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages, or instigates the commission of the crime. . . ." The court did *not* read an instruction on the natural and probable consequences doctrine (or felony murder).

Immediately after instructing the jury on direct aiding and abetting, the trial court read CALJIC No. 2.02, stating, in pertinent part: "The mental state with which an act is done may be shown by the circumstances surrounding the commission of the act. [¶] But you may not find the defendant guilty of the charged offenses, unless the proved circumstances are not on[ly] (1) consistent with the theory that *the defendant had the required mental state* but, (2) cannot be reconciled with any other rational conclusion. [¶] . . . [¶] "In the crimes charged in the information,

9

namely count [1], murder, and count [2], attempted murder, there must exist a certain mental state in the mind of the perpetrator. Unless such mental state exists the crime to which it relates is not committed. [¶] The mental state required is included in the definition of the crime charged." (Italics added.)

The trial court thereafter instructed the jury on the elements of murder, including the requisite malice aforethought (CALJIC No. 8.10), as well as the definition of malice aforethought (CALJIC No. 8.11). Then, the trial court instructed the jury on the only theory of first degree murder advanced by the prosecution: willful, deliberate, and premeditated murder. Using CALJIC No. 8.20, the court informed the jury, in pertinent part: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree. [¶] . . . [¶] "If you find that the killing was preceded and accompanied by a clear, deliberate *intent on the part of the defendant to kill*, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree. . . ." (Italics added.) The instruction concluded: "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice, and having in mind the consequences, he decides to and does kill." (Italics added.)

The trial court also instructed the jury on the elements of attempted murder, including the requisite "express malice aforethought, namely, a specific intent to kill unlawfully another human being." The court further instructed the jury on the

10

allegation that the attempted murder was willful, deliberate, and premeditated with CALJIC No. 8.67. This instruction included the same language regarding a clear, deliberate intent to kill that we quoted above from CALJIC No. 8.20 (Deliberate and Premeditated Murder), except that CALJIC No. 8.67 did not include the phrase "on the part of the defendant" in between the words "intent" and "to kill." CALJIC No. 8.67, as read by the court, also stated: "To constitute a willful, deliberate, and premeditated attempt to commit murder, *the would-be slayer* must weigh and consider the question of killing and the reasons for and against such a choice, and having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." (Italics added.)

E. **The written instructions given to the jury**

The clerk's transcript from Rosser's direct appeal of his convictions includes a packet of jury instructions, marked "GIVEN." The packet includes CALJIC No. 3.02, Principals—Liability for Natural and Probable Consequences, which reads: "One who aids and abets is not only guilty of the particular crime that to [his] [her] knowledge [his] [her] confederates are contemplating committing, but [he] [she] is also liable for the natural and probable consequences of any criminal act that [he] [she] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged [in Count[s] _____] was a natural and probable consequence of such originally contemplated crime." As noted above, the trial court did *not* orally read this instruction to the jury.

11

**F.    Verdicts, sentence, and direct appeal**

The jury found Rosser guilty of the murder of Pineda and indicated on the verdict form that it found the murder to be of the first degree.  The jury also found Rosser guilty of the attempted murder of Jackson and found true the allegation that the attempted murder was willful, deliberate, and premeditated.  As to both counts, the jury found true the allegation that a principal was armed with a firearm in the commission of the offenses (§ 12022, subd. (a)(1)).  The trial court sentenced Rosser to 25 years to life in prison for the murder, plus one year for the firearm enhancement, and imposed a concurrent term of life for the attempted murder.  Rosser appealed his convictions, and this court affirmed the judgment.  (*People v. Rosser*, *supra*, B066593.)

## II.    Rosser's Section 1172.6 Petition

In 2018, the Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Sen. Bill No. 1437 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).)  Senate Bill No. 1437 amended sections 188 (defining malice) and 189 (felony murder) and added section 1170.95, now renumbered section 1172.6, which established a procedure for vacating murder convictions and resentencing defendants who could no longer be convicted of murder in light of the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

On August 5, 2021, Rosser, as a self-represented litigant, filed a petition for resentencing under former section 1170.95, now section 1172.6. He checked boxes on a preprinted form, indicating he was convicted of murder under the natural and probable consequences doctrine or the felony murder rule, and he could not now be convicted of murder because of the amendments to sections 188 and 189 referenced above. He also checked the box requesting appointment of counsel in connection with his petition. In a declaration attached to the petition, he stated, in pertinent part: "Based on my reading of the new statutory interpretation, I could not now be convicted of the murder of this victim, and at most since the target offense was to assault in this case, criminal liability is limited to a finding of some determinate term within that range of criminal offenses."

On or around October 5, 2021, the trial court appointed counsel to represent Rosser. Also on October 5, 2021, the Governor signed into law Senate Bill No. 775 which amended then-section 1170.95 to, among other things, authorize relief for persons convicted of attempted murder under the natural and probable consequences doctrine. (Sen. Bill No. 775 (2020-2021 Reg. Sess.); Stats. 2021, ch. 551, § 2.) The amendment became effective January 1, 2022.

On February 14, 2022, the district attorney filed a response to Rosser's petition for resentencing.[3] Therein, the district attorney argued Rosser was ineligible for relief under the resentencing statute, asserting (1) Rosser's jury was not

_____

[3] In a declaration attached to the district attorney's request for an extension to file the response, dated December 15, 2021, the deputy district attorney stated that Rosser was "currently out of custody and off parole" in this case.

13

instructed on the felony murder rule or the natural and probable consequences doctrine; (2) Rosser could not have been convicted under either theory; and (3) the amendments to sections 188 and 189 do not apply to his case, and he could still be convicted of murder today under the same theory under which he was convicted in 1992, as a direct aider and abettor of the murder. The district attorney acknowledged in the response that the resentencing statute was amended after Rosser filed his petition to authorize relief for persons convicted of attempted murder under the natural and probable consequences doctrine, as we noted above.

The district attorney attached to the response excerpts of the reporter's transcript of Rosser's trial, including (1) the trial court's entire reading of the jury instructions (which, as explained above, did not include an instruction on either the felony murder rule or the natural and probable consequences doctrine); and (2) the portion of the conference between the court and the parties regarding jury instructions, during which the court denied the prosecution's request for an instruction on the natural and probable consequences doctrine (CALJIC No. 3.02), based on defense counsel's objection to such an instruction. The district attorney did *not* attach to the response the packet of instructions given to Rosser's jury, which apparently included CALJIC No. 3.02, Principles—Liability for Natural and Probable Consequences.

On February 25, 2022, in a supplement to the response, the district attorney submitted to the trial court a copy of an appellate opinion published the day after the district attorney filed the response to Rosser's petition for resentencing, *People v. Cortes* (2022) 75 Cal.App.5th 198. In that case, the Court of

14

Appeal affirmed an order denying a petition for resentencing where the defendant's jury was instructed on direct aiding and abetting of murder and attempted murder, and not liability for murder or attempted murder under the natural and probable consequences doctrine. (*Id*. at pp. 205-206.) The appellate court rejected the defendant's argument that the jury might have convicted him of murder or attempted murder under the natural and probable consequences doctrine based on the following argument to the jury by the prosecutor: " 'One who aids and abets is not only guilty of that particular crime in which that person aided and abetted but is also guilty of any crimes committed by a principal which are the natural and probable consequences of the crimes originally aided and abetted.' " (*Id*. at pp. 203, 205.) The Court of Appeal noted, "the prosecution did not argue at any point during trial, including closing argument, that a crime other than murder or attempted murder was committed, and no other crime was charged or at issue throughout the trial." (*Id*. at p. 205.)

Rosser's appointed counsel did not file a reply brief in support of the petition for resentencing. On April 28, 2022, the trial court held a hearing to determine if Rosser made a prima facie case for relief in his petition. Rosser was not present. The prosecutor argued, in full: "Your Honor, this defendant does not qualify for a reduction as reflected in my paperwork." The court asked defense counsel if she wanted to respond, and she submitted without argument. The court denied the petition, stating in its April 28, 2022 minute order, "the People present facts which indicate the petition was without merit."

15

## DISCUSSION

Rosser contends he has made a prima facie case for relief under section 1172.6 because he has shown his jury received a written instruction on the natural and probable consequences doctrine. He notes the parties did not bring this circumstance to the trial court's attention in connection with his petition for resentencing. Rather, the court only had before it the reporter's transcript of the instructions read to the jury, which did not include an instruction on the natural and probable consequences doctrine (or felony murder). He asserts the denial of his petition at the prima facie stage was error, based on this misunderstanding of his record of conviction, and the matter must be remanded for an evidentiary hearing under section 1172.6, subdivision (d).

Rosser acknowledges the issuance of an order to show cause under section 1172.6, subdivision (c) is not required in every murder/attempted murder case in which the jury received an instruction on the natural and probable consequences doctrine. He points out that when "there is something else in the record that shows as a matter of law the jury did not rely on that alternative theory of liability [the natural and probable consequences doctrine]," the trial court need not issue an order to show cause and hold an evidentiary hearing. As explained below, Rosser's record of conviction (including the jury instruction on premeditation and deliberation and the verdicts), shows he is ineligible for relief under section 1172.6 as a matter of law, notwithstanding the apparent inadvertent inclusion of a natural and probable consequences doctrine instruction in the packet given to the jury.

16

# I. Section 1172.6 and Other Applicable Law

Under section 1172.6, subdivision (a), "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [¶]  (2)  The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.  [¶]  (3)  The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

Senate Bill No. 1437 added the following provision to section 188:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  The effect of this amendment was to "eliminate[ ] natural and probable consequences liability for first

17

and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).) As set forth above, Senate Bill No. 775 subsequently amended former section 1170.95, now section 1172.6, to authorize relief for persons convicted of attempted murder under the natural and probable consequences doctrine.

When a defendant files a facially sufficient petition under section 1172.6, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie showing for relief. (§ 1172.6, subds. (b)-(c).) As our Supreme Court explained: "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)

If the trial court issues an order to show cause, the final step in the process is a hearing to determine if the petitioner is entitled to relief, where the trial court must vacate the petitioner's murder or attempted murder conviction and

resentence him or her on any remaining counts unless the prosecution can "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

"Whether the court conducted a proper inquiry under section [1172.6], subdivision (c)" at the prima facie stage—the issue before us—"is a question of statutory interpretation, which we review de novo." (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II. Rosser Is Ineligible for Relief Under Section 1172.6 as a Matter of Law

The prosecutor argued to the jury that Rosser acted with intent to kill in aiding and abetting a murder and an attempted murder; and the trial court read to the jury an instruction on direct aiding and abetting—a theory of murder/attempted murder that is still valid today. The court did not read to the jury an instruction on the natural and probable consequences doctrine, and no one referenced that doctrine in front of the jury. Notwithstanding these circumstances, Rosser argues the jury could have found him guilty of murder and attempted murder under the natural and probable consequences doctrine based on the inclusion of a CALJIC No. 3.02 form instruction in the packet given to the jury. He posits the jury could have found he aided and abetted a mere shooting, and not a murder or attempted murder, although no one advanced such a theory to the jury.

Rosser acknowledges that an instruction on the natural and probable consequences doctrine does not necessarily make a prima facie case for relief under section 1172.6. As Rosser stated in his briefing in this appeal, when "the jury is given a natural

19

and probable consequences instruction, the superior court must issue an order to show cause *unless there is something else in the record that shows as a matter of law the jury did not rely on that alternative theory of liability*." (Italics added.) Rosser's record of conviction includes "something else" that establishes he is ineligible for relief under section 1172.6 as a matter of law.

The jury found Rosser guilty of *first degree* murder. The only theory of first degree murder presented to the jury was willful, deliberate, and premeditated murder. As set forth above, CALJIC No. 8.20 (Deliberate and Premeditation Murder)—which the trial court read to the jury and included in the packet of jury instructions—informed the jury that a verdict of first degree murder required the jury to "find that the killing was preceded and accompanied by a clear, deliberate *intent on the part of the defendant to kill*, which was the result of deliberation and premeditation . . . ." (Italics added.) While this instruction also referenced "the slayer's" premeditation and deliberation,[4] it nonetheless required the jury to find "the defendant," Rosser, intended to kill Pineda in order to return a verdict of first degree murder. We must presume the jury followed the trial court's instruction on premeditation and deliberation in finding Rosser guilty of first degree murder. Accordingly, Rosser's record of conviction establishes the jury found he intended to kill Pineda.

---

[4] As set forth above, CALJIC No. 8.20, as given to Rosser's jury, also included the following language: "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice, and having in mind the consequences, he decides to and does kill." (Italics added.)

Rosser ignores this part of his record of conviction, although he placed it before us.

The Attorney General argues in the respondent's brief that *People v. Estrada* (2022) 77 Cal.App.5th 941 (*Estrada*) "is instructive," and we agree. There, like here, the defendant was convicted of first degree murder. His jury was instructed on direct aiding and abetting liability. In one of the aiding and abetting instructions, the trial court left in bracketed language, stating: " 'Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.' " (*Id*. at p. 946.) The Bench Notes to the instruction (which the jury did not see) explain that the bracketed language should be given to the jury if the prosecution is relying on the natural and probable consequences doctrine. Unlike here, the jury in *Estrada* was not given a separate instruction on the natural and probable consequences doctrine. (*Id*. at p. 947.)

The trial court in *Estrada* denied the defendant's petition for resentencing under former section 1170.95 without issuing an order to show cause, finding the defendant was ineligible for relief as a matter of law because the record showed he was convicted as a direct aider and abettor of the murder. (*Estrada*, *supra*, 77 Cal.App.5th at pp. 943-944.) The Court of Appeal affirmed for multiple reasons, including that the defendant's jury was not given a separate instruction on the natural and probable consequences doctrine. The appellate court's primary reason for affirming the order denying the petition, however, is the same reasoning we set forth above: "the record establishes that the jury instructions 'ensured that the jury would only find Estrada guilty

21

of first degree murder, even as an aider and abettor, if it concluded he acted willfully and with intent to kill . . . .' " (*Id*. at p. 945.) The Court of Appeal explained that the instructions on first degree murder " 'referred specifically to the defendant, not a principal, and informed the jury what the People had to prove as to the defendant. There was only one defendant in this case, Estrada. We assume the jury followed the instructions rather than disregarding them.' " (*Id*. at p. 948.)

In his briefing in this case, Rosser argues *Estrada* is inapplicable because the jury in that case was not given a separate instruction on the natural and probable consequences doctrine. But Rosser fails to address the *Estrada* court's primary reason for concluding the defendant was ineligible for relief as a matter of law. Here, as in *Estrada*, the jury instructions on first degree murder required the jury to find Rosser, himself, had an intent to kill when he aided and abetted the murder of Pineda.

As we set forth above, CALJIC No. 8.67—the instruction given in this case on the allegation that the attempted murder was willful, deliberate, and premeditated—did not expressly reference "the defendant," as did the instruction on willful, deliberate and premeditated murder (CALJIC No. 8.20). CALJIC No. 8.67, as given to Rosser's jury, stated in pertinent part: "If you find that the killing was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder." At trial (or in connection with the petition for resentencing), the parties did not analyze Rosser's mental state or actions

22

separately or differently for the murder of Pineda and the attempted murder of Jackson. Considering the jury instructions as a whole, along with the parties' arguments to the jury, it is clear the jury was instructed it could not find Rosser guilty of a willful, deliberate, and premeditated murder unless it found he acted with intent to kill. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256 [in reviewing an order denying a section 1172.6 petition at the prima facie stage, "we, the appellate court, 'must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions' [citation] and the jurors are 'presumed to have followed the court's instructions' "].)

For the foregoing reasons, Rosser's record of conviction establishes the jury did not find him guilty of the charged offenses under the natural and probable consequences doctrine. Rather, the jury found he acted with intent to kill when he aided and abetted the murder and the attempted murder. Rosser could be prosecuted for murder and attempted murder under the same direct aiding and abetting theory today. (See *Gentile*, *supra*, 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].) Thus, the trial court did not err in summarily denying his petition for failure to make a prima facie case for relief.

23

## DISPOSITION

The April 28, 2022 order denying the section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.